PEOPLE v TODD

PEOPLE v CARTER

PEOPLE v McCLURE

Docket Nos. 98203, 98575, 99632. Submitted October 4, 1990, at Detroit. Decided December 17, 1990, at 9:20 A.M.

Damion L. Todd, Vernard Carter, and Derrick T. McClure were tried jointly in the Detroit Recorder's Court, Michael J. Talbot, J. A jury convicted Todd of first-degree murder, assault with intent to murder, and possession of a firearm during the commission of a felony. Todd was sentenced to imprisonment for life, one hundred to two hundred years, and two years, respectively. The trial court, sitting as the trier of fact, convicted Carter of aiding and abetting Todd. Carter received the same sentences as Todd. Also, sitting as the trier of fact, the court convicted McClure of second-degree murder, assault with intent to commit great bodily harm, and possession of a firearm during the commission of a felony. McClure was sentenced to imprisonment for forty to eighty years, six to ten years, and two years, respectively. The defendants appealed, and their appeals were consolidated.

The Court of Appeals *held:*

1. Although Todd waived the issue for appeal, a statement by him to the police was properly admissible as evidence at trial. It is not clear that he unequivocally invoked his right to remain silent, and it cannot be concluded that the police failed to honor scrupulously his right to cut off questioning.

2. In light of Todd's own testimony that he had fired the shotgun that killed the victim, he was not prejudiced by the testimony of a police officer who related that the police investigation focused on Todd after Carter told the police that Todd had fired the gun.

3. The trial court did not err in refusing to confirm the accuracy of Todd's counsel's verbal description of a witness' nonverbal evidence regarding the angle at which Todd had held the shotgun as he fired.

4. The trial court did not err in failing to instruct the jury regarding involuntary manslaughter and reckless discharge of a firearm. Todd did not request an instruction regarding invol-

untary manslaughter, and such instructions were not appropriate in this case.

5. The trial court's instructions regarding second-degree murder and the intent required for conviction of first-degree murder, viewed in their entirety, did not result in a miscarriage of justice. Nor did manifest injustice result from the trial court's explanation to the jury with respect to why it was polled.

6. Because it is not reasonably possible for Todd to serve the sentence of one hundred to two hundred years for the assault conviction, the sentence is vacated, and the case is remanded for resentencing.

7. The failure of defense counsel to inform Carter of an offer of a plea bargain denied him the effective assistance of counsel requiring reversal of his convictions and remand for a new trial.

8. There was sufficient evidence to permit a rational trier of fact to find beyond a reasonable doubt that McClure had acted in reckless disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm.

9. Reception by the trial court of the jury's verdict against Todd while the prosecution against Carter and McClure was ongoing was not error requiring reversal. A judge is presumed to be able to decide a case solely on the basis of evidence properly admitted at trial and McClure did not rebut this presumption with evidence that the trial court's knowledge of the verdict affected its finding of McClure's guilt. Likewise, no error requiring reversal occurred when the trial court heard the prosecutor's closing argument in Todd's trial before concluding McClure's trial.

10. McClure's sentence of forty to eighty years for his conviction of second-degree murder significantly departed from the sentencing guidelines, requiring remand for a resentencing consistent with the principle of proportionality announced in *People v Milbourn,* 435 Mich 630 (1990).

*Todd,* affirmed but remanded for a resentencing.

*McClure,* affirmed but remanded for a resentencing.

*Carter,* reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John E. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training, and Appeals, and *Jan J. Raven* and *John P. Puleo,* Assistant Prosecuting Attorneys, for the people.

*Kenneth A. Webb,* for defendant Todd on appeal.

*Neil H. Fink* and *Mark J. Kriger,* for defendant Carter.

*Daniel J. Rust,* for defendant McClure.

Before: DANHOF, C.J., and CAVANAGH and W. R. BEASLEY,* JJ.

PER CURIAM. Defendants Damion Lavoial Todd, Vernard Carter, and Derrick Tyrone McClure were tried jointly in December of 1986 on charges stemming from an August 17, 1986, drive-by shooting in which Melody Rucker, age sixteen, was killed and Vinita Smith, age fifteen, was seriously injured. Rucker and Smith were among at least a dozen teenagers who were standing in front of a house in Detroit when Todd fired several shotgun blasts from the passenger seat of a car being driven by Carter. Todd was apparently firing toward another male teenager who was standing close to Rucker. The shotgun belonged to McClure, who was sitting in the back seat of the car. A fourth young man, Dwayne Smiley, who was also in the back seat, testified for the prosecution.

Todd was tried before a jury and was convicted of first-degree murder, MCL 750.316; MSA 28.548, assault with intent to murder, MCL 750.83; MSA 28.278, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He received prison sentences of natural life, one hundred to two hundred years, and two years, respectively. Carter and McClure waived jury trials. Carter was convicted of aiding and abetting Todd, and he received the same sentences

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

as Todd. McClure was convicted of second-degree murder, MCL 750.317; MSA 28.549, assault with intent to commit great bodily harm, MCL 750.84; MSA 28.279, and felony-firearm. He received sentences of forty to eighty years, six to ten years, and two years. Defendants appeal as of right, raising several issues. We have consolidated their cases for appeal. We affirm Todd's and McClure's convictions, but remand for resentencing in those cases. We reverse Carter's convictions and remand for a new trial.

### People v Todd

Defendant Todd first argues that in obtaining a statement from him, the police failed to scrupulously honor his right to remain silent as required by *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and *Michigan v Mosley,* 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975). We disagree. We note initially that defendant did not raise this argument at the *Walker* [1] hearing on his motion to suppress. Rather, he argued that his statement was not voluntary and understanding. Thus, this issue was not preserved. Further, we have held that, because the *Miranda* rule is only a procedural safeguard to protect constitutional rights, a *Miranda* argument does not implicate the "important constitutional question" exception to the preservation requirement. *People v Calloway,* 169 Mich App 810, 818; 427 NW2d 194 (1988). Therefore, this issue is waived.

Regardless, we are convinced that defendant's statement was admissible. Defendant did indicate, while en route to the police station with his aunt and Officer Smith, that he did not wish to speak to

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

Officer Smith at that time. However, it is not clear from his statement that he wished to cut off all questioning, or whether he simply did not wish to give a statement to Officer Smith at that time. Defendant's parents arrived at the police station sometime after defendant. Another officer spoke with defendant's parents and his aunt, after which the officer again advised defendant of his rights. Defendant then agreed to give a statement. Since it is not clear that defendant had unequivocally invoked his right to remain silent, we do not believe that the police failed to scrupulously honor defendant's right to cut off questioning. See and compare *People v Catey,* 135 Mich App 714, 719-726; 356 NW2d 241 (1984). Therefore, there was no *Miranda* or *Mosley* violation.

Defendant next argues that during his jury trial an officer made a comment which resulted in a violation of *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). In response to a question by defense counsel regarding how the police investigation focused on defendant Todd, the officer stated, "I had Vernard Carter's statement stating that Damion Todd had pulled the trigger."

Defense counsel did not object to the officer's statement, so this issue is waived absent manifest injustice. MCL 769.26; MSA 28.1096; *People v Rau,* 174 Mich App 339, 341; 436 NW2d 409 (1989). Since we find that defendant clearly was not prejudiced by the officer's statement, we need not decide whether the officer's statement resulted in a *Bruton* violation. Defendant took the stand and admitted that he shot the gun from the passenger seat of the moving car. The dispute centered on defendant's intent, not whether he "pulled the trigger." In light of defendant's own testimony, he clearly was not prejudiced by the officer's comment, and

any error that may have occurred did not rise to the level of manifest injustice.

As his next issue, defendant claims that the trial court erred by refusing to permit defense counsel to verbally describe, for the record, a witness' nonverbal indication of the angle at which defendant was holding the gun when he shot toward the people congregated in front of the house. Our examination of the record reveals that defense counsel actually described the witness' actions quite fully. The trial court then declined to confirm that counsel's description was accurate, saying that the angle of the gun was for the jury to decide. We are aware of no authority that would require the trial court to ratify a party's verbal description of nonverbal evidence. The record was not so incomplete as to jeopardize defendant's appeal. *People v Wilson (On Rehearing),* 96 Mich App 792, 797; 293 NW2d 710 (1980). Defendant's argument is without merit.

Next, defendant claims that the court committed error requiring reversal by refusing defense counsel's request for an instruction regarding the charge of involuntary manslaughter and by failing to instruct sua sponte regarding the charge of reckless discharge of a firearm. We disagree.

The trial court is generally required to give instructions that comport with the theories of the parties if they are requested and are supported by some evidence. *People v Benson,* 180 Mich App 433, 439; 447 NW2d 755 (1989). Regarding lesser included offenses, unless a party informs the trial court of the exact lesser included offenses for which instructions are being requested, the issue is not preserved for review. *People v Beach,* 429 Mich 450, 482; 418 NW2d 861 (1988); *People v Herbert Smith,* 396 Mich 362; 240 NW2d 245 (1976).

Our review of the record reveals that defense counsel expressly requested, in writing and verbally, an instruction regarding voluntary manslaughter. The trial court refused to give the instruction. On appeal, defendant does not argue that the trial court erred in failing to instruct regarding voluntary manslaughter. Instead, he argues that the court should have instructed the jury regarding involuntary manslaughter. Since defendant did not request this exact instruction, this issue is waived. *Beach, supra; Herbert Smith, supra.*

In any event, we believe that an instruction regarding involuntary manslaughter was inappropriate here. The only form of involuntary manslaughter that was arguably applicable here was the one that defines the offense as an unintentional killing of another without malice in the commission of some unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm. See *People v Beach, supra,* p 477; *People v Daniels,* 172 Mich App 374, 379; 431 NW2d 846 (1988). Defendant admitted that he repeatedly fired the shotgun from a moving car in the direction of the people in the front yard of the house. We believe that this was an unlawful act that naturally tended to cause death or great bodily harm. Therefore, an involuntary manslaughter instruction was inappropriate. This conclusion is not affected by defendant's claims that he did not aim at anyone and that he did not intend to kill anyone, or by one witness' ambiguous testimony that defendant may have been shooting high. It was the act of shooting the gun from a moving car toward a group of people which precluded an involuntary manslaughter instruction. Compare *People v Beach, supra,* pp 475-480. Since the instruction was not appropriate, there

would have been no error even if the instruction had been requested and refused. We also disagree that an instruction regarding reckless discharge of a firearm was appropriate here.

Defendant next raises two more jury instruction issues. He first claims that reversal is required because the trial court erred in making the following statement before instructing the jury on second-degree murder: "The law in Michigan also requires that in every case where first-degree murder is charged, I must also instruct you on second-degree murder." Defendant argues that by this statement the court indicated to the jury its belief that the law, but not the evidence, required the charge of second-degree murder. Defendant also claims that the court erred in instructing the jury regarding the element of malice of first-degree murder. Neither claim is meritorious.

Since defendant did not object to either instruction, we will not upset the verdict unless the instructions caused a miscarriage of justice. *People v Watkins,* 178 Mich 439, 450; 444 NW2d 201 (1989). Jury instructions must be reviewed in their entirety; they are not to be extracted piecemeal in an effort to establish error requiring reversal. *Id.*

Regarding the court's preface to its jury charge regarding second-degree murder, we disagree that the court's statement necessarily indicated its opinion on the case. But in any event, the court further instructed the jurors that, if they had come to believe during the course of the trial that the court was telling them how to decide the case, they must disregard that opinion, in that they are the sole and exclusive judges of the facts. The court also instructed that to convict defendant of a crime, they must be satisfied that every element was proven beyond a reasonable doubt. Therefore, when viewed in conjunction with the other in-

structions, the statement did not result in a mis-
carriage of justice.

With respect to the court's instruction regarding
the intent element of first-degree murder, it is true
that at one point the court's charge was somewhat
ambiguous with regard to whether the element
could be satisfied by something less than the in-
tent to kill. However, on at least four other occa-
sions the court clearly indicated that first-degree
murder requires the intent to kill, and twice the
court contrasted the intent elements of first- and
second-degree murder. There was no miscarriage
of justice.

As defendant's next issue, he claims that the
manner in which the jury was polled resulted in
error requiring reversal. A challenge to the court's
method of polling the jury is waived absent an
objection below or proof of manifest injustice. *Peo-
ple v Clarence Williams,* 37 Mich App 219, 220;
194 NW2d 527 (1971). Here, the trial court's expla-
nation to the jury of why it was being polled did
not result in manifest injustice.

As defendant's final issue, he claims that his
sentence of one hundred to two hundred years for
his assault conviction was impermissibly excessive.
We find that defendant's sentence for this convic-
tion must be vacated and the case remanded on
the basis that it is not reasonably possible for
defendant to serve the sentence. *People v Moore,*
432 Mich 311; 439 NW2d 684 (1989).

## People v Carter

Defendant Carter first argues that he was denied
the effective assistance of counsel. We agree and
therefore reverse defendant's convictions and re-
mand for a new trial.

Effective assistance of counsel is presumed, and

the defendant bears the burden of proving otherwise. *People v Harris,* 185 Mich App 100, 104; 460 NW2d 239 (1990). To establish a meritorious claim of ineffective assistance of counsel, the defendant must first show that counsel's performance was deficient, i.e., that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *People v Stammer,* 179 Mich App 432, 438; 446 NW2d 312 (1989). Second, the deficiency must have been prejudicial to the defendant. *Id.*

At the *Ginther*[2] hearing regarding defendant's motion for a new trial, defendant claimed that his trial counsel failed to convey to him a plea bargain offer which would have permitted him to plead guilty of second-degree murder and felony-firearm, with a minimum sentence of twenty-five years in prison for the murder conviction and two years for the felony-firearm. Recently, in *People v Williams,* 171 Mich App 234, 241-242; 429 NW2d 649 (1988), cert den 110 S Ct 369 (1989), a panel of this Court stated its position with regard to this issue:

> Although the issue has never been decided in Michigan, we agree with the many courts which have held that an attorney's failure to advise his client of a plea bargain offer may be ineffective assistance of counsel. *Williams v Arn,* 654 F Supp 226 (ND Ohio, 1987), app dis 820 F2d 1226 (1987); *People v Alexander,* 136 Misc 2d 573; 518 NYS2d 872 (1987); *Ex Parte Wilson,* 724 SW2d 72 (Tex Crim App, 1987); *Hanzelka v State,* 682 SW2d 385 (Tex App, 1984); *Young v State,* 470 NE2d 70 (Ind, 1984); *State v Simmons,* 65 NC App 294; 309 SE2d 493 (1983); *Lyles v State,* 178 Ind App 398; 382 NE2d 991 (1978). We further agree that defendant has the burden of proving by a preponderance of the evidence that a plea offer was made and that

---

[2] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

his counsel failed to communicate it to him. *Alexander, supra; State v Martin,* 318 NC 648; 350 SE2d 63 (1986); *Young, supra.*

In *Williams,* the plea offer was made during the course of the trial, and the prosecutor told the defense counsel that he would have to get his superior's approval of the terms of the offer. The Court held that, in order to establish that a "plea offer was made" in that situation, the defendant had to prove by a preponderance of the evidence that he would have accepted the plea and that the prosecutor's superior would have approved the plea. The Court found that the defendant had failed to prove that the prosecutor's superior would have accepted the terms of the offer, and the Court therefore affirmed the defendant's convictions.

We agree with the *Williams* Court that a failure to convey a plea bargain offer may constitute ineffective assistance of counsel, and we hold that, on the facts of this case, defendant was denied the effective assistance of counsel. There is no evidence that the prosecutor's plea offer in this case was conditioned on any further approval. There is also no dispute that a plea offer was made and that the defendant's counsel failed to communicate the offer to defendant. At the *Ginther* hearing, defendant's appellate counsel questioned defendant's trial counsel on the issue:

> *Q.* One last theory in this case. Are you aware whether or not a plea was offered to Mr. Carter?
> *A.* Yes.
> *Q.* And that plea offer was 25 years plus two on the firearm; is that correct?
> *A.* That is correct.
> *Q.* And did you ever see Mr. Carter or speak with Mr. Carter in regard to that plea offer?

*A.* I don't believe so.

*Q.* And could you tell the court why you decided to make the unilateral decision not to discuss this plea bargain with Mr. Carter?

*A.* Well, I didn't think that that was a good plea offer, and I still feel that the defense was strong in the case.

*Q.* So in other words, you felt that there was just really no chance of him being convicted under the facts because of [*People v Burrell*, 253 Mich 321; 235 NW 170 (1931)]?

*A.* Well, I wouldn't like to say no chance, but I felt that I could have persuaded the court to adopt the authority of *People v Burrell* in this case. I think there's always a chance whenever you come to court that you're going to lose.

In light of this testimony, we hold that defendant has carried his burden of proving that a plea offer was made and that counsel failed to communicate the offer. *Williams, supra.* Since defendant received a conviction and sentence that was substantially greater than the plea offer, he was prejudiced by the error. There is some indication in the record that defendant attended a final pretrial conference at which the plea offer was mentioned.[3] If the record were clear that defendant was actually informed of the offer at the conference, then our decision on this issue might be different. However, this point was discussed at the *Ginther* hearing, and we are not satisfied from the record that defendant was informed of the plea offer. Therefore, on the basis of the uncontroverted evidence that defense counsel failed to convey an authorized plea offer to defendant, we reverse defendant's convictions and remand for a new

---

[3] Defense counsel failed to attend both the conference and a hearing regarding defendant's motion to quash which was held on the same date as the pretrial conference.

trial. In light of our resolution of this issue, we need not discuss defendant's other claims of error.

## People v McClure

Defendant McClure first argues that there was insufficient evidence of the intent element to support the trial court's findings on that element. We have examined the record and we disagree. Defendant provided the shotgun that was used in the murder and assault. He rode in the back seat of the car, and, just before the shooting, he instructed Todd with regard to how to operate the gun. Viewed in the light most favorable to the prosecution, *People v Jackson,* 178 Mich App 62, 64; 443 NW2d 423 (1989), there was sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that defendant acted in reckless disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm. *People v Aaron,* 409 Mich 672, 728; 299 NW2d 304 (1980); *People v Hopson,* 178 Mich App 406, 410; 444 NW2d 167 (1989).

Defendant next argues that his convictions should be reversed because the court heard the jury's verdict regarding the charges against Todd while the bench trial against defendant and Carter was ongoing. The trial court in this case served as the trier of fact for defendants Carter and McClure, while a jury served as the trier of fact for defendant Todd. Following the completion of evidence in the Todd case, the jury was dismissed to deliberate. The court then heard additional evidence against defendants Carter and McClure. Before the prosecutor finished presenting his proofs against Carter and McClure, the jury was brought in and its guilty verdicts against Todd

were received. No objection was made to the procedure.

Defendant is correct that had this been a situation where there were two juries, and defendant's jury had learned of the other jury's verdict before beginning deliberations, then there would be serious error. See *People v Lytal,* 415 Mich 603, 612; 329 NW2d 738 (1982) (the conviction of another involved in a criminal enterprise is not admissible at the defendant's separate trial). However, a judge is presumed to be able to decide a case solely on the basis of the evidence properly admitted during trial. *People v Jones,* 168 Mich App 191, 194; 423 NW2d 614 (1988). Defendant has not rebutted this presumption with evidence that the court's knowledge of the jury verdict affected its verdict against defendant. We do not believe that the error complained of resulted in a miscarriage of justice. MCL 769.26; MSA 28.1096. For the same reasons, we disagree with defendant's argument that error requiring reversal resulted when the court heard the prosecutor's closing argument in the Todd case before finishing the bench trial against defendant.

Finally, defendant argues that his sentence was excessive. Defendant's sentence of forty to eighty years represented a significant departure from the sentencing guidelines. We therefore remand for resentencing to permit the court to sentence defendant in accordance with the principle of proportionality announced in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990).

Todd's and McClure's convictions are affirmed, and their cases are remanded for resentencing in accordance with this opinion. Carter's convictions are reversed, and the case remanded for a new trial. We retain no jurisdiction.