*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT JOHN GATHRITE,

        Defendant-Appellant.

UNPUBLISHED
December 5, 2019

No. 343753
Wayne Circuit Court
LC No. 17-007100-01-FC

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions for assault with intent to murder (AWIM), MCL 750.83, carrying a dangerous weapon with unlawful intent (carrying a dangerous weapon), MCL 750.226, discharging a firearm at a building causing injury (discharging a firearm), MCL 750.234b(3), felon in possession of a firearm (felon in possession), MCL 750.227f, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm defendant's convictions but remand to the trial court for further factual development regarding defendant's 25-point score for offense variable (OV) 13.

## I. BACKGROUND

Defendant's convictions result from his non-lethal shooting of his neighbor—and longtime friend—Bobby Mixon. Mixon testified that, on April 8, 2017, he was outside with another neighbor, Charlie Rock, and a man named "T" at Rock's home, which was next to defendant's home. Mixon's own home was across from defendant's home on the other side of the street. While the three men were talking near the sidewalk, defendant, who appeared intoxicated, jogged up and down the sidewalk, bumping into Mixon three times. Eventually the encounter led to a fist fight between Mixon and defendant, which was broken up by the other men. According to Mixon, after the fight broke up, both he and defendant returned to their separate homes.

Mixon testified that he was standing on his enclosed front porch a short time after the fight when he observed defendant emerge from his own home with a rifle. According to Mixon, defendant shot twice and Mixon dropped to the floor. Mixon testified that the gunshots

-1-

continued and began to increase in volume, as if they were being fired from closer distances. Mixon was shot six times, but was able to crawl into his home and call 911.

Detroit Police Officer Kristopher Herndon testified that he arrived at the scene of the shooting "[j]ust a couple of seconds" after receiving a call from dispatch regarding shots in the area. Detroit Police Officer Kevin Briggs arrived shortly thereafter. Both officers testified that they observed several shell casings in front of Mixon's home and in the street. A forensic technician later located 13 bullet holes in Mixon's enclosed porch.

The officers responded to Mixon after they heard him moaning nearby shortly after arriving at the scene of the shooting. Officer Herndon testified that, when he located Mixon, Mixon "looked in pretty bad shape, multiple gunshot wounds to his body, making a lot of noise, moaning, whining." Officer Herndon stated that he asked Mixon who had shot him and Mixon responded that defendant shot him because he had beat defendant up. Defense counsel cross-examined Officer Herndon, again asking Officer Herndon what Mixon had reported to him at the scene of the shooting. Officer Herndon reiterated that Mixon told him that defendant was the shooter.

As noted previously, a jury found defendant guilty of AWIM, MCL 750.83, carrying a dangerous weapon, MCL 750.226, discharging a firearm, MCL 750.234b(3), felon in possession, MCL 750.227f, and four counts of felony-firearm, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 30 to 60 years for the AWIM conviction, 10 to 20 years for the carrying-a-dangerous-weapon conviction, 10 to 20 years for the discharging-a-firearm conviction, and 10 to 20 years for the felon-in-possession conviction. The trial court sentenced defendant to a prison term of two years for each of the felony-firearm convictions. The trial court ordered the felony-firearm sentences to run concurrent with each other but consecutive to the remaining sentences. This appeal followed.

## II. ANALYSIS

### A. HEARSAY EVIDENCE

Defendant first argues that the trial court erred by admitting Mixon's hearsay identification of defendant through the testimony of Officer Herndon. Alternatively, defendant argues that his trial counsel was ineffective for failing to object to the hearsay statement and for actively soliciting Officer Herndon's hearsay responses. We disagree.

We review defendant's unpreserved evidentiary claim for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). A defendant requesting reversal of an otherwise valid conviction on the basis of his counsel's assistance bears the burden of establishing that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

As an initial matter, we note that defendant waived this issue by his counsel's active solicitation of the hearsay responses on cross-examination. See *Ohler v United States*, 529 US 753, 755; 120 S Ct 1851; 146 L Ed 2d 826 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."). Nonetheless, to the extent that resolution of defendant's claim of ineffective assistance requires us to address the hearsay issue, we will address the latter claim despite the waiver.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible except as provided by the rules of evidence. MRE 802. There is no question that Mixon's out-of-court statement to Officer Herndon was offered for the truth of the matter asserted, i.e., to identify defendant as the shooter. Thus, the statement qualifies as hearsay which would be inadmissible unless an exemption from MRE 801(c) or exception to MRE 802 applies.

Nonetheless, because the statement qualified under at least two exemptions or exceptions to the hearsay ban, defendant's claims are without merit. Most notably, the statement was admissible under MRE 801(d)(1)(C) as a statement involving identification. MRE 801(d)(1)(C) provides that a "statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person." There is no question that Mixon testified at trial and was subject to cross-examination. The challenged statement relates to Mixon personally watching defendant shooting at him and was made shortly after the shooting occurred. Accordingly, the statement was non-hearsay and was admissible at trial. See *People v Whitfield*, 214 Mich App 348, 350-351; 543 NW2d 347 (1995).

Moreover, the statement qualified as an excited utterance. MRE 803(2) defines an excited utterance as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." There can be no doubt that being shot multiple times qualifies as a "startling event." Officer Herndon testified that, when officers located Mixon, Mixon "looked in pretty bad shape, multiple gunshot wounds to his body, making a lot of noise, moaning, whining." Further, Mixon made the identifying statement during this initial encounter with officers, before his wounds had been treated and during the time when he was still under the excitement of the shooting. Thus, the statement was also admissible under MRE 803 as an exception to the hearsay ban.

Therefore, because the statement was admissible as nonhearsay or, alternatively, under an exception to the hearsay ban, both defendant's evidentiary claim and his claim of ineffective assistance of counsel are without merit. See *Sabin*, 242 Mich App at 660 (noting that trial counsel is not ineffective for failing to make a futile motion).

## B. OFFENSE VARIABLE 13

Defendant next argues that the trial court erred by assessing 25 points for OV 13. The proper interpretation and application of the sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error

-3-

and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, 327 Mich App 104, 111; ___ NW2d ___ (2019) (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 13 scores for a continuing pattern of felonious behavior. MCL 777.43. The trial court should score OV 13 at 25 points where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(b). "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). The PSIR appears to indicate that the three felonies justifying the trial court's 25-point score were (1) the sentencing offense of AWIM and (2) defendant's November 2012 convictions by plea in Florida for (a) obstructing and opposing a law-enforcement officer, and (b) battery,[1] after having been charged with battery on a law-enforcement officer, obstructing or opposing a law-enforcement officer, and battery. Defendant does not dispute that AWIM qualifies as a crime against a person; rather, defendant argues that AWIM was the only offense available to score OV-13.

The trial court may utilize convictions from other states to score OV 13 where it is demonstrated by "a preponderance of the evidence that the crimes actually took place, that the defendant committed them, [and] that they are properly classified" in Michigan as felonious crimes against a person within five years of the sentencing offense. *People v Butler*, 498 Mich 859, 859 (2015). See MCL 777.43. "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170, 172 (2012) (internal citation and quotation marks omitted).

As an initial matter, defendant's guilty pleas to the Florida crimes leave this Court without question that defendant actually committed the crimes. Therefore, the only question for our review is whether the Florida crimes would qualify as felonies against a person in Michigan. In Michigan, resisting and obstructing a police officer, MCL 750.81d, is a felony crime against a person, MCL 777.16d. Likewise, assaulting and battering a police officer, MCL 750.479, is a felony crime against a person, MCL 777.16x. Michigan, however, does not have a charge of battery, and Michigan's crime of assault and battery, MCL 750.81(1), is a misdemeanor.

Regarding defendant's Florida obstructing conviction, this crime is the obvious equivalent of our own obstructing felony, MCL 750.81d. Concerning defendant's battery conviction, however, we are without enough information to determine whether this crime is the Michigan equivalent of assaulting and battering a police officer, MCL 750.479, or the Michigan

---

[1] Plaintiff argues that defendant was convicted in Florida of obstruction and battery on a law-enforcement officer. The PSIR, however, does not support this assertion.

equivalent of misdemeanor assault and battery, MCL 750.81(1). Notably, conviction of a crime is not a prerequisite to scoring under OV 13. Rather, OV 13 scores for "all crimes within a 5-year period, including the sentencing offense . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Accordingly, it is the underlying factual scenario supporting the conviction which this Court must analyze to determine whether the defendant committed a crime which would be a felony against a person in Michigan—not the conviction itself.

In this case, the PSIR does not provide any context for defendant's convictions; rather, the PSIR indicates that Florida authorities could not be reached to provide any details about the conduct underlying defendant's offenses. This presents an unsurmountable hurdle for our review because several factual situations could explain defendant's three charges and two convictions.

For instance, in one scenario, defendant physically assaults a police officer and the prosecution charges him under alternative theories of battery of a law-enforcement officer and simple battery. Defendant then pleads guilty to the lesser charge of simple battery in exchange for dismissal of the greater charge of battery of a law-enforcement officer. Upon these facts, we would have no difficulty affirming the 25-point score for OV 13. Regardless of whether defendant was *convicted* of battering an officer, his *actions* would constitute that crime, which is the logical equivalent of our assaulting and battering a police officer. Because assaulting and battering a police officer is a felony crime against a person in Michigan, three felonies would support the 25-point score for OV 13.

Nonetheless, an equally likely scenario is that defendant's charges relate to defendant's alleged physical assault of both a police officer and someone else. In this scenario, the prosecution may have dropped the battering-an-officer charge because insufficient evidence supported that defendant assaulted an officer. Therefore, defendant's battery conviction would relate to a simple battery not on an officer. This simple battery would be the logical equivalent of our misdemeanor assault and battery, which would not qualify as a felony crime against a person. Thus, under this scenario, there would not be three felonies available to score OV 13 and the score would be erroneous.

Other factual scenarios may also explain defendant's Florida charges and pleas. The salient takeaway is that the PSIR is simply insufficient to conclude by a preponderance of the evidence that defendant committed three felony crimes against a person within five years of the sentencing offense. Accordingly, the PSIR is insufficient to support defendant's 25-point OV-13 score. Similarly, there is no other relevant support for the score in the record. Therefore, because the unsupported score increased defendant's guidelines range, we must remand this case to the trial court for further factual development. If the trial court concludes by a preponderance of the evidence that defendant's conduct related to the battery charges in Florida did, in fact, constitute a battery on an officer, the trial court need not resentence defendant. If, however, the trial court is unable to come to that conclusion by a preponderance of the evidence, defendant is entitled to resentencing. The trial court should state its factual findings on the record to facilitate our review of its decision.

## C. COURT COSTS

Finally, defendant challenges the trial court's imposition of $1,300 in court costs against him under MCL 769.1k(1)(b)(*iii*), claiming that the assessment is an unconstitutional tax. This Court, however, has already concluded that, although an assessment under MCL 769.1k(1)(b)(*iii*) is indeed a tax, it is not an unconstitutional one. *People v Cameron*, 319 Mich App 215, 218; 900 NW2d 658 (2017). As defendant notes, at the time he filed his appeal, our Supreme Court was considering whether to grant leave to appeal in *Cameron*. During the pendency of this appeal, however, our Supreme Court denied leave to appeal in *Cameron*. *People v Cameron*, 929 NW2d 785 (2019). Thus, because this Court has already conclusively determined that MCL 769.1k(1)(b)(*iii*) does not constitute an unconstitutional tax, we find defendant's argument to the contrary to be without merit.

## III. CONCLUSION

We affirm defendant's convictions and the trial court's imposition of court costs, but remand to the trial court for redetermination of defendant's OV-13 score and resentencing, if appropriate. We retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher

-6-

# Court of Appeals, State of Michigan

## ORDER

PEOPLE OF MI V ROBERT JOHN GATHRITE

Docket No.    343753

LC No.    17-007100-01-FC

Amy Ronayne Krause
Presiding Judge

Patrick M. Meter

Elizabeth L. Gleicher
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court shall, after appropriate factual development, determine whether by a preponderance of the evidence defendant's conduct related to the relevant Florida battery charges involved battery on an officer so as to support the scoring of 25 points for offense variable 13. Further, if the trial court determines on remand that the scoring of 25 points for offense variable 13 is not warranted, then it shall resentence defendant. The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared at public expense and filed within 21 days after completion of the proceedings.

/s/ Amy Ronayne Krause

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 5, 2019
Date

Chief Clerk